## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

RICHARD ROGALINSKI, Individually
and on Behalf of the Class,

        Plaintiffs,             Case No. 8:21-cv-01749-SDM-SPF

v.

META PLATFORMS, INC.,

        Defendant.

_____/

## META PLATFORMS, INC.'S
## MOTION TO DISMISS OR TRANSFER PLAINTIFF'S COMPLAINT

Defendant Meta Platforms, Inc. ("Meta") moves to dismiss plaintiff's complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6) because he has not stated and cannot state a claim upon which relief can be granted. In the alternative, Meta moves to transfer this case to the Northern District of California under the forum-selection clause to which plaintiff agreed when he registered for and used the Facebook service.

### INTRODUCTION

Plaintiff Richard Rogalinski is a Facebook user who alleges that Meta violated his First Amendment rights when it appended fact-checking statements to, or hid from view, certain posts he made about COVID-19 and COVID-19 vaccines. His complaint should be dismissed for a straightforward reason: The First Amendment prohibits only governmental restrictions of speech, and Meta is

not a governmental actor.  Rather, Meta is a private company and the editorial decisions it made about plaintiff's COVID-19 comments are Meta's, not the government's.  While there are some narrow circumstances in which private entities can be treated as state actors for First Amendment purposes, this case does not involve such a circumstance.  This Court should therefore join the many others that have dismissed on state-action grounds First Amendment claims asserted against social media companies like Meta.  *See, e.g.*, *Atkinson v. Meta Platforms, Inc.*, 2021 WL 5447022, at \*1–2 (9th Cir. Nov. 22, 2021); *Freedom Watch, Inc. v. Google Inc.*, 816 F. App'x 497, 499–500 (D.C. Cir. 2020) (per curiam); *Prager Univ. v. Google LLC*, 951 F.3d 991, 996–99 (9th Cir. 2020).  Indeed, many courts have rejected plaintiff's exact allegation—that "censoring" COVID-19 content transforms a social media company into a state actor.  *See, e.g.*, *Informed Consent Action Network v. YouTube LLC*, --- F. Supp. 3d ----, 2022 WL 278386, at \*3–8 (N.D. Cal. Jan. 31, 2022); *Children's Health Def. v. Facebook Inc.*, --- F. Supp. 3d ----, 2021 WL 2662064, at \*6–15 (N.D. Cal. June 29, 2021), *appeal docketed*, No. 21-16210 (9th Cir. July 21, 2021).

In the alternative, this Court may transfer the case to the United States District Court for the Northern District of California based on the forum-selection clause in Meta's Terms of Service ("Terms").

## BACKGROUND

Meta is a public company headquartered in California that operates various online services and applications, including Facebook.  *See* Compl. (ECF No. 1)

¶¶ 30, 32.  Using the Facebook service, users can share content and interact with content posted by other users.  *Id.* ¶¶ 69–70.

Meta has invested significant resources into developing rules and standards to moderate the user-created content on its service.  *See id.* ¶¶ 31–32.  Meta therefore labels, removes, and deprioritizes certain categories of content.  *Id.*  That editorial discretion includes removing and restricting access to COVID-19 misinformation, like false claims about the safety, efficacy, ingredients, or side effects of the COVID-19 vaccines.  *Id.* ¶¶ 21, 31–32, 37, 72–76, Exs. B–D.  Meta also relies on independent third-party fact-checkers to identify potentially harmful misinformation.  *Id.* ¶ 37, Exs. B–D.  Those third-party fact-checkers review content posted to the Facebook service and label certain posts as false or misleading.  *See id.*

Plaintiff is a current Facebook user who registered his account in September 2008.  *See* Decl. of Jenny Pricer ("Pricer Decl.") ¶ 2; Compl. ¶¶ 28, 37.  When he registered for Facebook, plaintiff agreed to Meta's Terms and Community Standards.[1]  *See* Pricer Decl. ¶¶ 3–4.  Among other things, Meta's Terms included a forum-selection clause identifying California as the required venue for all claims

---

[1] When deciding a motion to transfer under 28 U.S.C. § 1404, the Court may consider undisputed facts outside the pleadings.  *See, e.g.*, *Loomer v. Facebook, Inc.*, 2020 WL 2926357, at *2 (S.D. Fla. Apr. 13, 2020).

arising out of or relating to Meta's Terms and products.[2]  *Id.* ¶ 6.  Meta's current

forum-selection clause specifies California as the mandatory venue:

> For any claim, cause of action, or dispute you have against us that arises out of or relates to these Terms or the Meta Products ("claim"), you agree that it will be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County.  You also agree to submit to the personal jurisdiction of either of these courts for the purpose of litigating any such claim, and that the laws of the State of California will govern these Terms and any claim, without regard to conflict of law provisions.

*Id.*  Ex. 1, § 4(4).  Meta's Terms also explain that users cannot "do or share

anything" that violates Meta's Terms or Community Standards, and that Meta can

"remove or restrict access to content that is in violation of these provisions."  *Id.*

Ex. 1, § 3(2).

Plaintiff's complaint includes a single count: that Meta allegedly violated his

First Amendment right to freedom of speech.  Compl. ¶¶ 66–84.  Plaintiff alleges

that Meta "censor[ed]" him as well as other putative class members by "redacting,

hiding, removing or appending additional information onto" posts made about

COVID-19.  *Id.* ¶¶ 73–74; *see also id.* ¶¶ 31–34, 37, 39–41, 52, 75–78, 80.  In

particular, he alleges that Meta unlawfully "censor[ed]" three of his posts

discussing COVID-19.  *Id.* ¶ 37, Exs. B–D.  As for the first two posts—which

expressed doubts about the safety of masks and COVID-19 vaccines respectively—

Meta is not alleged to have removed or deprioritized those posts.  *Id.* ¶ 37(a)–(d),

---

[2] Meta's Terms also notify users that Meta may modify the Terms and that continued use of Facebook constitutes acceptance of those updated procedures.  Pricer Decl. Ex. 1, § 4(1).

Exs. B–C.  Rather, Meta "appended a statement" to the posts saying: "Missing Context.  Independent fact-checkers say this information could mislead people.  See Why."  *Id.*  As to a third post which concerned the efficacy of Hydroxychloroquine in treating COVID-19, Meta is alleged to have "hid the post from public view," labeled it as "False Information," and "cited a USA Today article from nearly a year earlier (July 21st, 2020), indicating that the drug Hydroxychloroquine was an ineffective treatment for COVID-19."  *Id.* ¶ 37(e)–(f), Ex. D.  Plaintiff alleges that these actions were "[a]t the direction of the Federal Government, or in communion therewith" and that Meta is therefore a state actor.  *Id.* ¶¶ 73, 78.

Plaintiff seeks to certify a class of all Facebook users who, since January 20, 2021, have "had their public statements, comments or posts on the Facebook platform censored, modified, hidden, appended or curtailed by the Defendant."  *Id.* ¶ 57 (emphasis omitted).  He seeks a judgment declaring Meta's behavior unconstitutional, enjoining it from restricting speech about COVID-19, and awarding attorney's fees and costs, and compensation for "damages resulting from the . . . unconstitutional activity."  *Id.* at 18–19.

## LEGAL STANDARDS

***Dismissal Under Rule 12(b)(6).***  To survive a motion to dismiss under Rule 12(b)(6), a complaint's factual allegations must support "a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* For each claim, plaintiff must set forth factual allegations that establish all "the material elements of a cause of action." *AFL-CIO v. City of Miami*, 637 F.3d 1178, 1186 (11th Cir. 2011). The Court should "dismiss a complaint if it rests only on 'conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts.'" *Cox v. Nobles*, 15 F.4th 1350, 1357 (11th Cir. 2021) (citation omitted).

**Transfer Under 28 U.S.C. § 1404(a).** A forum-selection clause is presumptively enforceable under 28 U.S.C. § 1404(a). *See Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62–63 (2013). "Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Id.* at 62; *see also Rucker v. Oasis Legal Fin., L.L.C.*, 632 F.3d 1231, 1236 (11th Cir. 2011) (forum-selection clauses "are presumptively valid and enforceable" (citation omitted)). A plaintiff's contrary choice of forum "merits no weight," and a district court is prohibited from "consider[ing] arguments about the parties' private interests." *Atl. Marine Constr.*, 571 U.S. at 63–64. A plaintiff seeking to evade a forum-selection clause must show that public-interest factors "overwhelmingly disfavor a transfer." *Id.* at 67.

## ARGUMENT

## I. PLAINTIFF'S FIRST AMENDMENT CLAIM SHOULD BE DISMISSED BECAUSE META IS NOT A STATE ACTOR.

Plaintiff's claim fails because Meta is a private entity. The First Amendment "prohibits only ***governmental*** abridgment of speech," not "***private*** abridgment

of speech." *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019). As the Supreme Court has explained, "when a private entity provides a forum for speech, the private entity is not ordinarily constrained by the First Amendment." *Id.* at 1930. Rather, the First Amendment generally protects a private entity's ability to exercise editorial judgment over the speech and speakers in the forum. That is because the First Amendment protects "both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). Just as the government may not compel private parties to distribute its own preferred message, the government may not compel one private speaker to distribute the message of another private speaker.

To be sure, there are "rare circumstances [in which] a private party [can] be viewed as a 'state actor.'" *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992); *see also Halleck*, 139 S. Ct. at 1928 (same). The Eleventh Circuit has identified three: (1) when a private entity performs a traditional, exclusive public function; (2) when the government compels a private entity to take a particular action; and (3) when the government acts jointly with a private entity. *Nat'l Broad. Co. v. Commc'ns Workers of Am.*, 860 F.2d 1022, 1026–27 (11th Cir. 1988); *see also Halleck*, 139 S. Ct. at 1928.

None of those circumstances even remotely applies to Meta. To the contrary, courts across the country have held that Meta and companies like it are not state

actors.[3]   Courts also have consistently rejected attempts to transform private companies into state actors based on their response to the COVID-19 pandemic. *See, e.g.*, *Anderson v. United Airlines, Inc.*, --- F. Supp. 3d ----, 2021 WL 6337144, at *5 (M.D. Fla. Dec. 30, 2021) (denying motion for preliminary injunction), *appeal docketed*, No. 22-10254 (11th Cir. Jan. 24, 2022); *Children's Health Def.*, 2021 WL 2662064, at *10–13 (granting motion to dismiss because "working together" with the government to reduce COVID-19 misinformation does not transform Meta into a state actor).   This Court should likewise dismiss this action, because plaintiff fails to show that Meta is a state actor under any test.

### A.   Plaintiff Fails To Plausibly Allege That Meta Performs An Exclusively Public Function.

"The public function test for state action has been limited strictly, and covers only private actors performing functions 'traditionally the exclusive prerogative of the State.'" *Nat'l Broad. Co.*, 860 F.2d at 1026 (citation omitted) ("Selecting media

---

[3] *See, e.g.*, *Atkinson*, 2021 WL 5447022; *Lewis v. Google LLC*, 851 F. App'x 723 (9th Cir. 2021); *Freedom Watch*, 816 F. App'x 497; *Prager Univ.*, 951 F.3d 991; *Informed Consent Action Network*, 2022 WL 278386; *O'Handley v. Padilla*, 2022 WL 93625 (N.D. Cal. Jan. 10, 2022), *appeal docketed*, No. 22-15071 (9th Cir. Jan. 18, 2022); *Sescey v. YouTube*, 2021 WL 5399916 (E.D. Pa. Nov. 18, 2021); *Doe v. Google LLC*, 2021 WL 4864418 (N.D. Cal. Oct. 19, 2021), *appeal docketed*, No. 21-16934 (9th Cir. Nov. 18, 2021); *Children's Health Def.*, 2021 WL 2662064; *Newman v. Google LLC*, 2021 WL 2633423 (N.D. Cal. June 25, 2021); *Brock v. Zuckerberg*, 2021 WL 2650070 (S.D.N.Y. June 25, 2021), *appeal docketed*, No. 21-1796 (2d Cir. July 23, 2021); *Rutenburg v. Twitter, Inc.*, 2021 WL 1338958 (N.D. Cal. Apr. 9, 2021), *appeal docketed*, No. 21-16074 (9th Cir. June 25, 2021); *Daniels v. Alphabet Inc.*, 2021 WL 1222166 (N.D. Cal. Mar. 31, 2021); *Divino Grp. LLC v. Google LLC*, 2021 WL 51715 (N.D. Cal. Jan. 6, 2021); *Belknap v. Alphabet, Inc.*, 504 F. Supp. 3d 1156 (D. Or. 2020); *Zimmerman v. Facebook, Inc.*, 2020 WL 5877863 (N.D. Cal. Oct. 2, 2020); *Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107 (N.D. Cal. 2020); *Ebeid v. Facebook, Inc.*, 2019 WL 2059662 (N.D. Cal. May 9, 2019); *Davison v. Facebook, Inc.*, 370 F. Supp. 3d 621 (E.D. Va. 2019), *aff'd*, 774 F. App'x 162 (4th Cir. 2019) (per curiam); *Nyabwa v. Facebook*, 2018 WL 585467 (S.D. Tex. Jan. 26, 2018); *Shulman v. Facebook.com*, 2017 WL 5129885 (D.N.J. Nov. 6, 2017).

stations to cover a speech has never been an exclusive function of the government, nor has constructing and renting space in which to conduct meetings."). The public function test "embraces very few activities." *Harvey*, 949 F.2d at 1131 (citation omitted).

Plaintiff's primary argument—that the Facebook service's "function . . . in modern times is identical to that of the public forums originally contemplated by Congress"—does not satisfy the public function test. Compl ¶¶ 6–10, 13–14, 31, 38. As the Supreme Court has recognized, "merely hosting speech by others is not a traditional, exclusive public function." *Halleck*, 139 S. Ct. at 1930. "A private entity . . . who opens its property for speech by others is not transformed by that fact alone into a state actor." *Id.* at 1934. That holding forecloses any argument that Meta is a government actor because it exercises a traditional, exclusive public function. *See Prager Univ.*, 951 F.3d at 998 (holding that YouTube is not a state actor because "hosting speech on a private platform" "is hardly 'an activity that only governmental entities have traditionally performed'" (quoting *Halleck*, 139 S.Ct. at 1930)); *Freedom Watch*, 816 F. App'x at 499–500 (similar). Instead, by moderating content on its platform, Meta acted as the private owner of that property. Deciding who can use one's own property is not a public function that is "traditionally the ***exclusive*** prerogative of the State." *Rendell-Baker v. Kohn*, 457 U.S. 830, 839–43 (1982) (citations omitted). That is instead the sort of behavior private parties routinely engage in. And plaintiff concedes that Meta "is not

automatically a 'state actor' just based upon the provision of [its] social media networks to the public."  Compl. ¶ 50.

Citing the Supreme Court's decision in *Packingham v. North Carolina*, 137 S. Ct. 1730 (2017), plaintiff contends that "social media companies . . . have become an integral and necessary component of the public forum."  Compl. ¶¶ 45, 47.  But *Packingham* addressed whether the ***state*** can restrict an individual's ability to access social media—not whether an ***online service provider*** can restrict content on its platform.  That is why courts have consistently held that *Packingham* creates no basis for a First Amendment claim against private online service providers.  *See, e.g.*, *Freedom Watch, Inc. v. Google, Inc.*, 368 F. Supp. 3d 30, 40–41 (D.D.C. 2019) (*Packingham* "did not create a new cause of action against a private entity for an alleged First Amendment violation."), *aff'd,* 816 F. App'x 497 (D.C. Cir. 2020) (per curiam); *Prager Univ.*, 951 F.3d at 996 & n.2 ("PragerU's citation to cases involving the ***government***'s regulation of online speech are inapposite.  Because the government was the relevant actor, state action was not contested."); *Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1122 (N.D. Cal. 2020) ("*Packingham* does not undermine the Court's conclusion that Facebook does not constitute a public forum.").

### B.    Plaintiff Fails To Plausibly Allege Government Coercion.

The key question under the government compulsion test is "whether the State 'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be

that of the State.'"   *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999) (citations omitted).  "The state compulsion test . . . limits state action to instances in which the government has coerced or at least significantly encouraged the action alleged to violate the Constitution."  *Nat'l Broad. Co.,* 860 F.2d at 1026.

Plaintiff alleges that Meta is a state actor because it followed "specific directives issued by" President Biden and his administration about COVID-19 misinformation.  Compl. ¶ 55.  To support that claim, plaintiff points only to a July 15, 2021 press conference by White House Press Secretary Jen Psaki, in which she answered a question about the "request for tech companies to be more aggressive in policing misinformation."  Compl. ¶ 22, Ex. A.  In response Ms. Psaki identified a number of "actions" that "the federal government" had taken including "flagging problematic posts for Facebook that spread disinformation" and suggesting "proposed changes" "to social media platforms, including Facebook."  *Id.*

For many reasons, Ms. Psaki's statements fall well short of the type of government "coercion" necessary to transform a private actor into a state actor.  First and foremost, her statements do not constitute "coercion" at all.  On the rare occasion when courts have found state action based on pressure from government officials, a state official with legal control over the private party's actions threatened to impose legal sanctions (such as criminal prosecution) if the private party did not comply with the official's demands.  *See, e.g.*, *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 63 n.5, 66–71 (1963) (finding state action when public commission threatened that "[t]he Attorney General will act for [the commission]

in case of non-compliance"); *Carlin Commc'ns, Inc. v. Mountain States Tel. & Tel. Co.*, 827 F.2d 1291, 1295 (9th Cir. 1987) (finding state action when deputy county attorney threatened to prosecute private party).

There is nothing of that sort here.  Rather, Ms. Psaki discussed only "request[s]" the administration had made of social media companies, posts they had "flagg[ed]," and policy changes they had "proposed."  Compl. Ex. A.  She did not threaten any legal retribution if Meta failed to comply, nor point to any penalties that the Biden administration would impose.  Without the threat of concrete, imminent, and substantial sanctions, plaintiff's state-action allegations never get out of the gate.  *See, e.g.*, *Zhou v. Breed*, 2022 WL 135815, at *1 (9th Cir. Jan. 14, 2022) ("The mere fact that . . . public officials criticized a billboard or called for its removal, without coercion or threat of government sanction, does not make that billboard's subsequent removal by a private party state action."); *Doe v. Google LLC*, 2021 WL 4864418, at *3 (N.D. Cal. Oct. 19, 2021) (statements by members of Congress did not make YouTube a state actor because "[p]laintiffs fail[ed] to point to any penalties that necessarily or even likely would have followed if [d]efendants did not suspend their accounts"), *appeal docketed*, No. 21-16934 (9th Cir. Nov. 18, 2021); *Daniels v. Alphabet Inc.*, 2021 WL 1222166, at *6 (N.D. Cal. Mar. 31, 2021) ("[S]peculative assertions . . . do not support a theory of government action.").

Nor does it matter that the executive branch might have approved of Meta's actions about COVID-19 misinformation.  It is well established that "the mere

approval or acquiescence of the State is not state action." *Sullivan*, 526 U.S. at 52; *accord Blum v. Yaretsky*, 457 U.S. 991, 1004–05 (1982); *Nat'l Broad. Co.*, 860 F.2d at 1025. Much more than governmental "approval" is required before courts will take the extraordinary step of treating a private actor as a public one for First Amendment purposes.

Plaintiff also does not plausibly allege that "the [government] is responsible for ***the specific conduct***" that he complains about, which he must for his claim to succeed. *Carlin Commc'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1357 (11th Cir. 1986) (emphasis added); *see also Blum*, 457 U.S. at 1010 (no state action when government regulations did "not dictate the decision . . . in a particular case"). Plaintiff's complaint does nothing to tie the governmental coercion he alleges existed to the specific actions he alleges that Meta took with respect to him. Nor could he:   Ms. Psaki's comments—besides not reflecting governmental "coercion" at all—were made weeks and months ***after*** the alleged acts of "censorship" plaintiff identifies in his complaint. Compl. ¶¶ 22, 37, Exs. A–D. Without allegations about coercion for the specific decisions plaintiff objects to, which the complaint lacks, his coercion theory fails.

### C.      Plaintiff Fails To Plausibly Allege That The Government And Meta Are Joint Participants.

Plaintiff's joint-action allegations fare no better. "To charge a private party with state action under this standard, the governmental body and private party must be intertwined in a 'symbiotic relationship.'" *Nat'l Broad. Co.*, 860 F.2d at 1027 (citation omitted). The private party must be "so interrelated with the federal

government that they were in effect one entity." *Morast v. Lance*, 807 F.2d 926, 931 (11th Cir. 1987); *Anderson*, 2021 WL 6337144, at *5 ("Under the nexus/joint test, 'the government has so far insinuated itself into a position of interdependence with the private party that it was a joint participant in the enterprise.'" (citation omitted)).   Moreover, "the symbiotic relationship must involve the 'specific conduct of which the plaintiff complains.'" *Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1348 (11th Cir. 2001) (citations omitted).

Plaintiff's allegations fall well short of that demanding standard.  At most, plaintiff points only to statements from the White House Press Secretary indicating that the administration was hoping to work with social media companies to curb COVID-19 misinformation.  That is nowhere near alleging that Meta and the federal government were in a "symbiotic relationship" or "in effect one entity," much less that they acted in that way with respect to the ***specific posts*** identified in plaintiff's complaint.   And although plaintiff alleges that the Biden administration and Meta share the same "dogmatic narrative," Compl. ¶ 22, that argument suggests at most a general alignment to promote accurate information about COVID-19.  Having a common objective with the government does not alone transform a private company into a state actor.  *See, e.g.*, *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1455 (10th Cir. 1995) (the fact that the government and private entity shared a "common goal" is not enough to establish joint action); *Nat'l Broad. Co.*, 860 F.2d at 1025; *cf. Ass'n of Am. Physicians & Surgeons, Inc. v. Schiff*, --- F.4th ----, 2022 WL 211219, at *4 (D.C. Cir. Jan. 25,

2022) ("[I]t is far less plausible that the companies' actions were a response to one legislator's inquiry than that they were a response to widespread societal concerns about online misinformation.").  In any event, plaintiff's own allegations show that the government and Meta were not entirely aligned on this issue.  *See* Compl. ¶ 22, Ex. A ("Facebook needs to move more quickly").

Indeed, several other courts have already addressed and rejected arguments that social media companies act as state actors when they remove content related to COVID-19 just because their efforts align with similar efforts by the federal government to prevent the proliferation of misinformation.  In *Children's Health Defense*, 2021 WL 2662064, at *11, for example, the plaintiff alleged that Meta "work[ed] together" with the CDC "to reduce the spread of health or vaccine misinformation" and to "promote universal vaccination."  The court held that those claims were insufficient to allege state action because "the specific acts challenged"—there, as here, decisions to label posts as "'false' or 'misleading'"— were not made pursuant to a government policy.  *Id.* at *12–13.  Just so here. Similarly, in *Daniels*, 2021 WL 1222166, at *7, the court held that allegations that members of Congress "wanted certain kinds of [content related to the COVID-19 pandemic] removed and that [plaintiff's content] fell within that category" did "not reflect the kind of government involvement" needed to transform YouTube's decisions about content on its platform into state action.  *See Informed Consent Action Network*, 2022 WL 278386, at *4–8 (rejecting claim that YouTube and Meta violated the First Amendment by removing videos about COVID-19);

*O'Handley v. Padilla*, 2022 WL 93625, at *10–11 (N.D. Cal. Jan. 10, 2022) ("Generalized statements about working together do not demonstrate joint action."), *appeal docketed*, No. 22-15071 (9th Cir. Jan. 18, 2022); *see also Doe*, 2021 WL 4864418, at *5–6 (no joint action when "there is no allegation that government officials were in the room or somehow directly involved in the decision to suspend" conservative content creators). Again, plaintiff has not alleged that Meta and the government coordinated to label or remove his specific content, and his general allegations about government coordination are insufficient to allege joint action.

Because plaintiff did not allege a colorable claim that Meta is a state actor, this case must be dismissed.[4]

*       *       *       *       *

Plaintiff gets the First Amendment interests at issue backwards. He asks this Court to hold Meta liable under the First Amendment for demoting, deleting, or otherwise "censor[ing]" content, including through third-party fact checks. *See* Compl. ¶¶ 73–76. But the First Amendment does not ***limit*** Meta's ability to control content on its service; rather, it ***protects*** Meta's right to exercise "editorial control over speech and speakers on [its] properties or platforms." *Halleck*, 139 S. Ct. at 1932–33. Editorial decision-making by private actors cannot be regulated

---

[4] At a minimum, the Court should dismiss plaintiff's claim for damages because Congress has not authorized suits for damages for his First Amendment claim. *See Hernandez v. Mesa*, 140 S. Ct. 735, 743–750 (2020); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 71 (2001).

"consistent with First Amendment guarantees." *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974); *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 572–73 (1995); *see also Isaac v. Twitter, Inc.*, --- F. Supp. 3d ----, 2021 WL 3860654, at *7 (S.D. Fla. Aug. 30, 2021) (Twitter "has a 'First Amendment right to decide what to publish and what not to publish on its platform'" (citations omitted)); *La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 991 (S.D. Tex. 2017) (similar). "This is because a platform's decision to publish or not publish particular [posts] says something about what that platform represents." *O'Handley*, 2022 WL 93625, at *15; *NetChoice, LLC v. Paxton*, --- F. Supp. 3d ----, 2021 WL 5755120, at *8 (W.D. Tex. Dec. 1, 2021) ("[S]ocial media platforms . . . curate both users and content to convey a message about the type of community the platform seeks to foster and, as such, exercise editorial discretion over their platform's content."), *appeal docketed*, No. 21-51178 (5th Cir. Dec. 7, 2021).

## II.   IF THIS CASE IS NOT DISMISSED, IT SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA.

This case is improper for another reason. The parties' forum-selection clause is valid and enforceable, it covers plaintiff's claim, and it is mandatory, and so it is entitled to "controlling weight." *Atl. Marine Constr.*, 571 U.S. at 63. No extraordinary circumstance justifies ignoring the parties' agreement to litigate this case in California. If the Court declines to dismiss the case, it should transfer it.

### A.    Meta's Forum-Selection Clause Is Valid And Enforceable.

"Forum-selection clauses are presumptively valid and enforceable unless the plaintiff makes a 'strong showing' that enforcement would be unfair or unreasonable under the circumstances." *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009) (per curiam) (citations omitted).  No such showing is possible here.

To assess whether a contract was induced by "fraud or overreaching," courts look to whether "the clause was reasonably communicated to the consumer," who then had the chance to reject its terms.[5]  *Id.*  Plaintiff had to affirmatively agree to Meta's Terms to create a Facebook account.  *See* Pricer Decl. ¶¶ 2–4.  The Terms at all relevant times identified California as the exclusive venue for disputes.  *Id.* ¶ 6.  Plaintiff could have declined the Terms at the outset.  Instead, he accepted them and is therefore bound by them.  *See, e.g.*, *Davis v. Avvo, Inc.*, 2011 WL 4063282, at *2–3 (M.D. Fla. Sept. 13, 2011) (enforcing forum-selection clause in terms accepted as a condition of creating account); *Segal v. Amazon.com, Inc.*, 763 F. Supp. 2d 1367, 1369 (S.D. Fla. 2011) (similar).

Courts routinely treat Meta's Terms and its forum-selection clause as binding.  *See* Order at 11–16, *Trump v. Facebook, Inc.*, No. 1:21-cv-22440-KMW (S.D. Fla. Nov. 19, 2021), ECF No. 108; *Loomer v. Facebook, Inc.*, 2020 WL 2926357, at *1–3 (S.D. Fla. Apr. 13, 2020); *Soffin v. eChannel Network, Inc.*, 2014

---

[5] Courts apply federal law to determine whether a forum-selection clause is enforceable.  *See, e.g.*, *P & S Bus. Machs., Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003) (per curiam).

WL 2938347, at *1–2 (S.D. Fla. June 30, 2014); *Dolin v. Facebook, Inc.*, 289 F. Supp. 3d 1153, 1160 (D. Haw. 2018) ("Under similar circumstances, numerous courts have found Facebook's . . . forum-selection clause to be valid." (collecting cases)); *Loveland v. Facebook*, 2021 WL 1734800, at *4–6 (E.D. Pa. May 3, 2021); *Kidstar v. Facebook, Inc.*, 2020 WL 4382279, at *3–5 (D.N.J. July 31, 2020); *Hayes v. Facebook*, 2019 WL 8275335, at *2–3 (D. Colo. Mar. 6, 2019); *Thomas v. Facebook, Inc.*, 2018 WL 3915585, at *4 (E.D. Cal. Aug. 15, 2018) ("[T]he Court is not aware of any case concluding that the forum selection clause in [Meta's Terms] is invalid."); *E.K.D. ex rel. Dawes v. Facebook, Inc.*, 885 F. Supp. 2d 894, 900–03 (S.D. Ill. 2012); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 834–41 (S.D.N.Y. 2012). Nothing supports departing from those decisions. Transfer to the Northern District of California will neither "deprive[]" plaintiff of his "day in court" nor "contravene public policy." *Loomer*, 2020 WL 2926357, at *3–4. As a result, the parties' forum-selection clause is valid and enforceable.

### B.  Meta's Forum-Selection Clause Covers Plaintiff's First Amendment Claim.

Plaintiff's First Amendment claim falls within the scope of the forum-selection clause. Under Meta's Terms, "any claim, cause of action, or dispute" against Meta "that arises out of or relates to these Terms or the Meta Products . . . will be resolved exclusively in" California. Pricer Decl. Ex. 1, § 4(4). To be governed by that provision, plaintiff's claim only has to "'relate' to the Terms" or the Meta Products. *Loomer*, 2020 WL 2926357, at *3 ("[t]he terms of [Meta's] forum-selection clause are broad" and encompass defamation claims); *see Miller*

*v. Facebook, Inc.*, 2010 WL 9525523, at *2 (N.D. Ga. Jan. 15, 2010) (use of the term "any dispute" was "broad enough to include" patent-infringement claims when the alleged infringement "occurred either on Facebook's website or in the use of Facebook's site").

Plaintiff's claim "arises out of or relates to" a "Meta Product[]," the Facebook service itself.  Plaintiff sues on behalf of a class of Facebook "users and account holders and participants" and complains about the "censorship" of posts on the Facebook service.  *E.g.*, Compl. ¶¶ 68–70, 73–76.  He objects to Meta blocking and commenting on his Facebook posts, *id.* ¶ 82, and seeks injunctive relief barring Meta from doing so, *id.* at 18–19.  Those allegations "relate[] to" plaintiff's use of Facebook and so fall within the forum-selection clause.

### C.    Meta's Forum-Selection Clause Is Mandatory.

Meta's forum-selection clause is mandatory because it "dictates an exclusive forum for litigation under the contract."  *Coffee Bean Trading-Roasting, LLC v. Coffee Holding, Inc.*, 510 F. Supp. 2d 1075, 1077 (S.D. Fla. 2007) (citation omitted). The clause provides that applicable claims "***will be*** resolved ***exclusively*** in the U.S. District Court for the Northern District of California or a state court located in San Mateo County."  Pricer Decl. Ex. 1, § 4(4) (emphases added).  That language is both unequivocal and mandatory.  *See, e.g.*, *E.K.D. ex rel. Dawes*, 885 F. Supp. 2d at 900–01 ("A forum-selection clause is mandatory where its 'language is obligatory' and 'clearly manifests an intent to make venue compulsory and exclusive.'" (citation omitted)); *see also Emerald Grande, Inc. v. Junkin*, 334 F.

App'x 973, 976 (11th Cir. 2009) (per curiam) (language declaring that specific courts "will be the venue for any dispute" is mandatory); *Trafalgar Cap. Specialized Inv. Fund (In Liquidation) v. Hartman*, 878 F. Supp. 2d 1274, 1283–84 (S.D. Fla. 2012) (nondiscretionary terms like "exclusively" are "the hallmark of a mandatory forum selection clause").

### D.   No Extraordinary Circumstances Justify Disregarding The Parties' Contract.

No "extraordinary circumstances" justify disregarding the parties' agreement. *Atl. Marine Constr.*, 571 U.S. at 62–66; *see Miller*, 2010 WL 9525523, at *3 ("exceptional circumstances" counseling against transfer did not exist). If the parties entered into a valid forum-selection clause, courts must ignore "arguments about the parties' private interests," *Atl. Marine Constr.*, 571 U.S. at 64, and instead only (1) "determine whether an adequate alternative forum exists" and (2) "consider the relevant public interest factors," *Gordon v. Sandals Resorts Int'l, Ltd.*, 418 F. Supp. 3d 1132, 1142 (S.D. Fla. 2019); *see McArthur v. Kerzner Int'l Bahamas Ltd.*, 607 F. App'x 845, 848 (11th Cir. 2015) (per curiam). Here, the factors require transfer to the Northern District of California.

To start, "the Northern District of California is clearly an available adequate alternative forum." *Hindi v. BirdEye, Inc.*, 2019 WL 4091425, at *8 (S.D. Fla. Aug. 29, 2019). That court has personal jurisdiction over Meta, which is headquartered there. *See* Compl. ¶ 30; *see also Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015) (a corporation's principal place of business is a "paradigm all-purpose forum[]" (citation omitted)). And, unsurprisingly, courts

therefore routinely transfer cases to the Northern District of California based on Meta's forum-selection clause.  *See, e.g.*, Order at 18–22, *Trump v. Facebook, Inc.*, No. 1:21-cv-22440-KMW (S.D. Fla. Nov. 19, 2021), ECF No. 108; *Loomer*, 2020 WL 2926357, at *1, *4; *Miller*, 2010 WL 9525523, at *3; *Soffin*, 2014 WL 2938347, at *2.

Next, public-interest factors "will rarely defeat a transfer motion" because "forum-selection clauses should control except in unusual cases."  *Atl. Marine Constr.*, 571 U.S. at 64.  In this case, the public-interest factors outlined in *Atlantic Marine Construction*—the risk of administrative difficulties, local interest in resolution of local issues, and "the interest in having the trial of a diversity case in a forum that is at home with the law" confirm that transfer is appropriate.  *Id.* at 62–64 & n.6 (citation omitted).

Litigation in the Northern District of California poses no real risk of "administrative difficulties."  And to the extent "local interest[s]" are at play, this case has greater ties to California, where Meta is headquartered and where the alleged misconduct purportedly took place.  Indeed, plaintiff tries to bring a claim on behalf of a ***nationwide*** class.  Compl. ¶ 57.  What is more, plaintiff brings only a singular federal law claim, which any federal court could adjudicate.  *See, e.g.*, *Hight v. U.S. Dep't of Homeland Sec.*, 391 F. Supp. 3d 1178, 1186 (S.D. Fla. 2019); *see also Beckerman v. Heiman*, 2006 WL 1663034, at *9 (S.D.N.Y. 2006) ("[F]ederal courts are equally capable of adjudicating" federal claims.).  The

relevant factors support transfer, and plaintiff cannot show "that public-interest factors overwhelmingly disfavor" one. *Atl. Marine Constr.*, 571 U.S. at 67.

**CONCLUSION**

For the above reasons, Meta respectfully requests that the Court dismiss plaintiff's complaint with prejudice or, in the alternative, transfer this case to the Northern District of California.

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), undersigned counsel certifies that counsel for Meta conferred with counsel for plaintiff by phone, and that plaintiff opposes the relief requested in this motion.

**DATED**:  February 10, 2022    Respectfully Submitted,

*/s/ Dennis P. Waggoner*
Dennis P. Waggoner (FBN: 509426)
Tori C. Simmons (FBN: 107081)
Hill Ward Henderson, P.A.
101 East Kennedy Blvd. Suite 3700
Tampa, FL 33602
Telephone: (813) 221-3900
Facsimile: (813) 221-2900
Email: dennis.waggoner@hwhlaw.com
Email: tori.simmons@hwhlaw.com

Craig S. Primis, P.C. (*pro hac vice*)
K. Winn Allen, P.C. (*pro hac vice*)
Kate H. Epstein (*pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5000
Facsimile: (202) 389-5200
Email: cprimis@kirkland.com
Email: winn.allen@kirkland.com
Email: kate.epstein@kirkland.com

*Attorneys for Defendant Meta Platforms, Inc.*

16516473v1